Ivan **BORRERO** and Cecilia Borrero, individually, and as parents and natural guardians of Anthony Borrero, a minor, Plaintiffs,

v.

**METRO–DADE COUNTY, and Officer** Ivan Serrano, Defendants.

No. 97–1706–CIV.

United States District Court, S.D. Florida.

May 13, 1998.

David Kleinberg, Coral Gables, FL, for Plaintiffs.

Thomas Ronzetti, Miami, FL, for Defendants.

### ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

JAMES LAWRENCE KING, District Judge.

THIS CAUSE comes before the Court on Defendant Officer Ivan Serrano's ("Officer Serrano" or the "Officer") Motion for Summary Judgment, filed April 15, 1998. Plaintiffs filed a response on May 1, 1998, and Defendant filed a reply on May 8, 1998.

### I. Factual Background

This case arises from an incident that took place on August 11, 1994 at one of the trailer parks set up·in southern Miami–Dade County after Hurricane Andrew. Most of the facts surrounding the incident are in dispute. Officer Serrano claims that at approximately 10:30 a.m. that morning he was responding to an unrelated call when he heard glass breaking. *See* Def.'s Mot. for Summ. J., Ex. A, Sworn Statement of Ivan Serrano, at 6. Officer Serrano states that he then observed Plaintiff Anthony Borrero ("Borrero") and two other juveniles smashing the windows of a trailer with a piece of wood. Officer Serrano states that at that point Borrero "appeared to be a young juvenile . . . and he was short and thin." *Id.* at 7. The Officer claims that he then proceeded in his marked police car toward the juveniles. Officer Serrano states that after Borrero saw the police cars he threw down the stick he had been carrying and began to flee. He allegedly ran into another, vacant trailer and then exited through the other side of the trailer.

The Officer claims that at that moment he told Borrero "freeze police," *id.* at 8, but that the child began to run again, slipped on some dirt and gravel, and fell backwards onto the ground, *see id.* at 8–9. The Officer states that he ran to pick up the child, who began swinging his arms and kicking his legs. Officer Serrano states that although he told Borrero to calm down, he kicked the officer in the mouth, cutting his lip. *See id.* at 9. Because the child kept screaming, and because the Officer then noticed that the child was bleeding from the back of his head, Officer Serrano took Borrero to the police car, handcuffed him and sat him in the back seat, and summoned fire rescue. *See id.* at 10. Officer Serrano claims that he put a bandage on the cut, cleaned up Borrero, and asked one of the other officers who had arrived at the scene to get Borrero's parents. *See id.* at 11. Officer Serrano states that when the parents arrived, he spoke to them and then released the child to them. *See id.* at 11–12. Borrero was charged with criminal mischief and trespass to a structure. *See id.* at 13.

Borrero and his parents tell a very different story. Borrero, who at the time of the incident was six years old, approximately 3'10" tall, and weighed about fifty-nine pounds, states that he was playing near his parent's trailer and that there were some older boys also playing in the area.[1] *See* Aff. of Anthony Borrero ¶ 2. Borrero claims that Officer Serrano drove his car rapidly toward him, jumped out of his car, and ran straight toward him. Borrero states that he tried to run away, but that the Officer grabbed him and slammed him down onto the ground, hurting his head and jarring one of his teeth loose. *See id.* ¶¶ 5–7. Borrero states that the Officer then handcuffed him, dragged him to the police car, and put him in the back seat. *See id.* ¶ 7. The child claims that the Officer appeared to be ready to leave the scene when his father arrived. *See id.* at ¶ 8. Borrero denies having fallen on his own and denies having kicked Officer Serrano in the mouth. *See id.* at ¶¶ 9–10.

Borrero's father corroborates this story by stating that, from his home, he saw the Officer pull the handcuffed Borrero along the ground to the police car. *See* Aff. of Ivan Borrero ¶ 5. Like his son, Borrero's father also states that the Officer seemed to be prepared to leave the scene. *See id.* ¶¶ 6–7. The father insists that he had to tell the officer to give first aid to his son and that he had to request that the officer call an ambulance. *See id.* ¶¶ 7–8. Borrero's father alleges that Officer Serrano stated that the child had fallen forward, instead of backward, as Officer Serrano now claims. *See id.* ¶ 8. The Plaintiffs further allege that Borrero's father and mother attempted to speak to witnesses, but Officer Serrano and other officers who had gathered at the scene physically blocked them from speaking to witnesses and threatened to have them evicted from the trailer park. *See id.* ¶ 9. The father claims that only at that point did Officer Serrano say that he had been kicked, even though he showed no visible signs of injury. *See id.* ¶ 10. Borrero's mother has provided a practically identical version of events to those described by her husband. *See* Aff. of Cecilia Borrero. Borrero's parents claim that in addition to physical injury their son has suffered emotional instability and experienced problems in school ever since the incident.

Plaintiffs have also submitted the affidavit of Linda Jackson, who claims that she saw Officer Serrano

> chase [Borrero] through a trailer and when the policeman finally caught up with him outside the trailer he grabbed him from behind and threw him down over his leg so that the boy landed on his head.... All the child was doing was attempting to run home to his mother where the boy lived in the same trailer park.

Aff. of Linda Jackson ¶¶ 2, 4. Plaintiffs have filed suit against Officer Serrano and Miami–Dade County ("County"), alleging violation of 42 U.S.C. § 1983 (1994) (Counts I and II), assault and battery (Counts III and IV), and negligent retention and hiring against only the County (Count V). Officer Serrano has moved for summary judgment, arguing that he is entitled to qualified immunity.

## II. Legal Standard

Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court must view the evidence in the light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. If the movant meets this burden, the burden then shifts to the nonmoving party to establish that a genuine dispute of material fact exits. *See Hairston v. Gainesville Sun Publ'g Co.,* 9 F.3d 913, 918 (11th Cir.1993). If the evidence relied on is such that a reasonable jury could return a verdict in favor of the nonmoving party, then

---

**1.** Although medical records from the date of the incident reveal that Borrero does weigh approximately fifty-nine pounds, Officer Serrano indicated on Borrero's arrest affidavit that the child weighed 130 pounds.

the Court should refuse to grant summary judgment. *See id.* at 919. However, a mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment. *See Anderson,* 477 U.S. at 252, 106 S.Ct. 2505. If the evidence is merely colorable or is not significantly probative, summary judgment is proper. *See id.* at 249–50, 106 S.Ct. 2505.

## III. Analysis

■ Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 817–18, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). As the Supreme Court has recently emphasized, one of the important reasons underlying the doctrine is "a strong public interest in protecting public officials from the costs associated with the defense of damages actions." *Crawford–El v. Britton,* —— U.S. ——, 118 S.Ct. 1584, 1592–93, 140 L.Ed.2d 759 (1998).

■ Therefore, qualified immunity will not apply only when a reasonable official would have known that her actions violated an individual's clearly established rights. *See Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). To demonstrate that a right is clearly established, "the burden is on the plaintiff to show that, when the defendant acted, the law established the contours of a right so clearly that a reasonable official would have understood his acts were unlawful." *Post v. City of Fort Lauderdale,* 7 F.3d 1552, 1557 (11th Cir.1993) (citing *Anderson,* 483 U.S. at 640, 107 S.Ct. 3034), *modified,* 14 F.3d 583 (11th Cir.1994). A plaintiff must thus point to factual scenarios in preexisting case law demonstrating that the challenged actions are illegal. *See Jones v. City of Dothan, Ala.,* 121 F.3d 1456, 1459 (11th Cir.1997) (requiring courts to undertake "the fact-intensive inquiry that the qualified immunity standard demands"); *Post,* 7 F.3d at 1557. However, the Supreme Court has explained that the absence of a prior case with virtually identical facts does not always mean that qualified immunity is appropriate:

> [G]eneral statements of the law are not inherently incapable of giving fair and clear warning, and in other instances a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though "the very action in question has [not] previously been held unlawful."

*United States v. Lanier,* 520 U.S. 259, 117 S.Ct. 1219, 1227, 137 L.Ed.2d 432 (1997) (quoting *Anderson,* 483 U.S. at 640, 107 S.Ct. 3034); *accord Madiwale v. Savaiko,* 117 F.3d 1321, 1324 (11th Cir.1997). A court's task, therefore, is to determine whether, in light of prior law, a reasonable official would have had fair warning that her actions violated constitutional or statutory rights. *See Lanier,* 117 S.Ct. at 1227 ("[T]he qualified immunity test is simply the adaptation of the fair warning standard to give officials (and, ultimately, governments) the same protection from civil liability and its consequences that individuals have traditionally possessed in the face of vague criminal statutes.").

■ In the present case, Plaintiffs argue that Officer Serrano violated Borrero's Fourth Amendment right to be free of an unreasonable seizure when he allegedly grabbed Borrero and slammed him to the ground, causing a laceration to the back of his head and jarring one of his teeth loose. As a general proposition, "It is clearly established that the use of excessive force in carrying out an arrest constitutes a violation of the Fourth Amendment." *Thornton v. City of Macon,* 132 F.3d 1395, 1400 (11th Cir. 1998). When determining whether the force employed was unlawfully excessive, courts must look to "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor,* 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989); *Jones,* 121 F.3d at 1460 (considering also "the need for force, the amount of force used, and the injury inflicted"). In light of these

considerations, qualified immunity is appropriate if an officer in the same situation would have believed that the force used was not excessive. *See Thornton,* 132 F.3d at 1400 (citing *Anderson,* 483 U.S. at 635, 107 S.Ct. 3034).

In *Thornton,* a police officer was sent to the home of Marjorie Mullis ("Mullis"), who had requested help in securing the return of her mattress from Plaintiff Mark Thornton's ("Thornton") home. When the officer arrived at Thornton's apartment and explained that he wanted to pick up the mattress, Thornton told the officer that he had done nothing wrong and that he wanted the officer to leave. Thornton then entered his apartment, closing a screen door behind him, and again told the officer (and another officer who had by that time arrived) to leave his property. The officers coerced Thornton into opening the screen door, charged into the apartment, and "threw Thornton to the floor, cuffed his hands behind his back, picked him up by his arms, dragged him outside and shoved him into a police car." *Id.* at 1398. The officers also mistreated and handcuffed an acquaintance of Thornton, Tommy Cravey, who was at the scene. Noting that the officers had no right to use any force at all against the men, the Eleventh Circuit affirmed the district court's denial of qualified immunity, emphasizing that "[n]either Thornton nor Cravey was suspected of having committed a serious crime, neither posed an immediate threat to anyone, and neither actively resisted arrest." *Id.* at 1400.[2]

■ The facts of this case are similar. According to evidence submitted by Plaintiffs, including the affidavits of Borrero, his parents, and an eyewitness, Officer Serrano chased after, grabbed, and threw to the ground a six-year old child who was simply playing in the area close to his parent's home. While Plaintiffs may not be able ultimately to prove this version of events, the Court at this point must take the evidence in the light most favorable to Plaintiffs. Viewed in this way, the facts indicate that Borrero had committed no crime, much less a serious one, and he could not have posed any threat to the officer or others (even Officer Serrano states that Borrero let go of the piece of wood he allegedly was carrying). Although the child was fleeing from the officer, this alone did not entitle Officer Serrano to have used the force he did. While the fact that the child was running from the officer distinguishes this case somewhat from *Thornton,* the present facts are perhaps more egregious given the plaintiff's young age and small size. Plaintiffs' evidence suggests that Officer Serrano, like the officers in *Thornton,* had no right to use *any* force against Borrero, and thus his actions would constitute excessive force in violation of Borrero's Fourth Amendment rights. *See id.; cf. Leslie v. Ingram,* 786 F.2d 1533, 1535–36 (11th Cir.1986) (holding excessive force claim valid where plaintiff had committed no crime). Therefore, as the facts stand at the summary judgment stage, Officer Serrano is not entitled to qualified immunity.[3]

■ Moreover, showing that a right is "clearly established" is not the only way a plaintiff can get around the shield of qualified immunity. Courts will also deny officials qualified immunity if their actions are so clearly unlawful that they violate the very core of the constitutional or statutory right at issue. *See Smith v. Mattox,* 127 F.3d 1416, 1419 (11th Cir.1997) (noting that "plaintiff can overcome qualified immunity" when "the official's conduct lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of caselaw") (citing *Lanier,* 117 S.Ct. at 1227).

---

**2.** Although *Thornton* was decided this year, the incident took place in June 1990 and the Eleventh Circuit relied on established case law existing at that time. Thus, the same principles are applicable to this case, which began near Borrero's home in August 1994.

**3.** A denial of qualified immunity based on the present posture of this case does not mean, of course, that Officer Serrano would not be entitled to qualified immunity if the evidence later proves a different version of events. *See Stone v. Peacock,* 968 F.2d 1163, 1166 (11th Cir.1992) (noting qualified immunity may be granted after trial).

In *Mattox,* police officers went to a home to investigate a drug tip. When Mattox, one of the officers, entered the front yard of the home, the plaintiff Smith menacingly raised a baseball bat that he had been holding. Mattox drew his gun and ordered Smith to drop the bat. Smith did so but then fled. Mattox finally arrested Smith peacefully. When Mattox put Smith on the ground to handcuff him, he pulled Smith's left arm behind his back. Smith complained, but Mattox, with a grunt and blow, broke Smith's arm, causing multiple fractures. Believing he was entitled to qualified immunity, Mattox argued that there was no controlling case with similar facts that would have put him on notice that his actions were unlawful. Although the court agreed that no such case existed at the time of the incident, the Court found that the defendant's "conduct was so far beyond the hazy border between excessive and acceptable force that Mattox had to know he was violating the Constitution even without case-law on point." *Id.* at 1418. The court specifically noted that two of the factors that must be considered in excessive force cases were on Mattox's side: Mattox could have believed that Smith was dangerous because of the upraised bat, and when Smith first fled from the officer, he was resisting arrest. Nevertheless, the court explained, the fact that the suspected crime was unclear, coupled with the severity of the injury, pushed the case over the line: "We thus conclude that this case falls within the slender category of cases in which the unlawfulness of the conduct is readily apparent even without clarifying caselaw." *Id.* at 1420.

 If *Mattox* falls into the slender category of cases described by the Eleventh Circuit, so too must the present one. Viewing the evidence in the light most favorable to Plaintiffs, all of the factors the Court must consider militate against a finding of qualified immunity: Borrero had committed no crime (and even if Officer Serrano's version is correct, vandalizing an abandoned trailer cannot be considered a serious crime), Borrero could not have posed a threat to anyone, and although the child was fleeing from the officer, Borrero was not evading arrest (accepting as true that he had committed no crime). Furthermore, a blow to the back of the head severe enough to cause a laceration and loss of teeth can surely be characterized as a serious injury, especially in light of the fact that Plaintiff was a six-year old, fifty-nine pound boy. Therefore, the Court finds that even if no cases were completely analogous, viewing the evidence in the light most favorable to Plaintiffs, Officer Serrano's alleged actions were obviously violative of the Fourth Amendment. *See id.; McDonald v. Haskins,* 966 F.2d 292, 295 (7th Cir.1992) ("It would create perverse incentives indeed if a qualified immunity defense could succeed against those types of claims that have not previously arisen because the behavior alleged is so egregious that no like case is on the books.").

## IV. Conclusion

The evidence viewed in the light most favorable to Plaintiffs indicates that Borrero, a child of six years weighing approximately fifty-nine pounds, was playing near his home when Officer Serrano began to chase him and threw him to the ground, causing a laceration to the back of his head and jarring one of his teeth loose. Without determining whether this is in fact how the events transpired, the Court finds that these actions, if true (and the Court must view them as such at the summary judgment stage), would have violated Borrero's clearly established Fourth Amendment right to be free of an unreasonable seizure. The Court also finds that even if prior caselaw had not clearly established violation of this right under the facts of the instant case, Officer's Serrano's actions, viewed in the light most favorable to Plaintiffs, were such that any reasonable officer should have known of their unlawfulness. Therefore, Officer Serrano is not entitled to summary judgment on the ground of qualified immunity at this point.

Accordingly, after a careful review of the record, and the Court being otherwise fully advised, it is

ORDERED and ADJUDGED that Defendant's Motion for Summary Judgment be, and the same is hereby, DENIED.