FILED
United States Court of Appeals
Tenth Circuit

**January 20, 2010**

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

MIGUEL HERRERA,

      Plaintiff-Appellee,

v.

BERNALILLO COUNTY BOARD OF
COUNTY COMMISSIONERS; CHRIS
ROMERO; GERALD KOPPMAN;
CHRISTOPHER MCHUGH,
individually and in their official
capacities,

      Defendants-Appellants.

No. 09-2042
(D.C. No. 1:08-CV-00361-JEC-CG)
(D. N.M.)

---

**ORDER AND JUDGMENT**[*]

---

Before **LUCERO**, **GORSUCH**, and **HOLMES**, Circuit Judges.

---

Miguel Herrera brought various claims against the Bernalillo County Board

of County Commissioners and three sheriff's deputies arising from his encounter

with those deputies late one night while walking through a residential

---

[*] After examining appellant's brief and the appellate record, this panel has
determined unanimously that oral argument would not materially assist the
determination of this appeal. *See* Fed. R. App. P. 34(a)(2) and 10th Cir. R.
34.1(G). The case is therefore ordered submitted without oral argument. This
order and judgment is not binding precedent except under the doctrines of law of
the case, res judicata and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

neighborhood in Albuquerque, New Mexico.  At summary judgment, the district

court dismissed several of those claims but permitted others to proceed.  Relevant

for purposes of this appeal, the district court denied the deputies' assertion that

qualified immunity barred Mr. Herrera's claim against them for excessive force

under 42 U.S.C. § 1983 and the Fourth Amendment.  Before us, the deputies

argue that this ruling is in error, and that they are entitled to qualified immunity.

Our review of the record, however, confirms the district court's assessment of the

deputies' claim to qualified immunity.  Accordingly, we affirm.[1]

I

A

Viewing the facts in the light most favorable to Mr. Herrera as we must,

*Casey v. City of Fed. Heights*, 509 F.3d 1278, 1279 (10th Cir. 2007), they reveal

that prior to his arrest in the early hours of September 30, 2007, Mr. Herrera was

attending a party at a private home in Albuquerque, New Mexico.  When officers

from the Albuquerque Police Department arrived at the party in response to a

complaint about the noise and hour of the party, Mr. Herrera was ordered to leave

---

[1] Beyond contesting the district court's qualified immunity ruling on Mr. Herrera's § 1983 excessive force claim, before us the deputies also seek to challenge the district court's denial of summary judgment on Mr. Herrera's state law battery and assault claims.  Because we affirm the district court's qualified immunity ruling, we decline to exercise pendent jurisdiction over the state law assault and battery claims.  *See Fogarty v. Gallegos*, 523 F.3d 1147, 1154 (10th Cir. 2008).

and issued a citation for being a minor in possession of alcohol, though this charge was later dismissed.

At around the same time, Darise Gallegos, who lived around the corner from the house hosting the party, notified Bernalillo County Sheriff's Deputies Chris Romero, Gerald Koppman, and Christopher McHugh that a man – whose identity remains unknown – had been hiding in the bushes on her property and had cursed at her when she told him to leave. Ms. Gallegos indicated the direction in which she believed the man had fled, and the deputies pursued the man on foot. The deputies ended up running into the same field where Mr. Herrera was walking following his departure from the party. Mr. Herrera contends that he never hid in any bushes and was not the individual the deputies were chasing.

When the deputies saw Mr. Herrera, they instructed him to stop. Mr. Herrera asserts that the deputies specifically shouted "stop or we'll shoot." App. at 127. It is undisputed that Mr. Herrera promptly complied with the deputies' order, lying face down on the ground with his hands out. At this point, Mr. Romero, Mr. Koppman, and Mr. McHugh approached Mr. Herrera and all three jumped on him. One deputy drove his knee into Mr. Herrera's back. A second deputy drove his knee into the back of Mr. Herrera's left knee. The third deputy grabbed Mr. Herrera's left leg and twisted it by the ankle. Mr. Herrera claims he told the officers they were hurting him, to which they responded "Shut

up or you're going to make things worse for yourself." App. at 128. Mr. Herrera was then handcuffed and arrested for "resisting, evading or obstructing an officer," though this charge was later dropped.

B

In due course, Mr. Herrera brought suit against the deputies and the Bernalillo County Board of County Commissioners. He claimed, among other things, that the deputies violated 42 U.S.C. § 1983 when they used excessive force against him in violation of his Fourth Amendment rights. In support of this claim, Mr. Herrera alleged that ligaments in his left knee and his meniscus were torn as a result of the force the deputies used in arresting him. Before the district court, the deputies argued that they were entitled to qualified immunity. The district court, however, held otherwise. Viewing the facts in the light most favorable to Mr. Herrera, the district court concluded that Mr. Herrera "was unarmed at the time of arrest," and that there was "no evidence to indicate he posed any threat to the safety of" the deputies. App. at 303. The facts so viewed further showed that at the time of his arrest the deputies suspected Mr. Herrera of committing only a misdemeanor, and that Mr. Herrera did not attempt "to resist or evade" the deputies. App. at 303. Based on these facts, the court held that a reasonable jury could conclude that the deputies engaged in constitutionally excessive force. The court then proceeded to hold that the law at the time of the alleged incident clearly established that the deputies' conduct was constitutionally

- 4 -

excessive: "reasonable officers would have known they should not have behaved as they did toward" Mr. Herrera, "particularly considering his compliance at the time of arrest." App. at 304. The deputies subsequently filed this interlocutory appeal challenging the district court's denial of qualified immunity.

II

While orders denying summary judgment are not normally susceptible to appeal, those denying summary judgment on the basis of qualified immunity constitute an exception to this rule when they concern questions of law. *Behrens v. Pelletier*, 516 U.S. 299, 313 (1996); *Fogarty*, 523 F.3d at 1153. This is such a case. The deputies before us argue that they are entitled to qualified immunity as a matter of law even under Mr. Herrera's proffered version of the facts, and we have explained that "[o]ur jurisdiction . . . extends to situations where a defendant claims on appeal that accepting the plaintiff's version of the facts as true, he is still entitled to qualified immunity." *Buck v. City of Albuquerque*, 549 F.3d 1269, 1276 (10th Cir. 2008) (quotations omitted).

When, as here, the defendants assert qualified immunity at summary judgment, the burden shifts to the plaintiff to meet two tests. First, the plaintiff must show that on the facts alleged the defendants violated the plaintiff's constitutional or statutory rights. *Martinez v. Carr*, 479 F.3d 1292, 1295 (10th Cir. 2007). Second, the plaintiff must demonstrate that the infringed right was clearly established at the time of the defendants' allegedly unlawful conduct

- 5 -

such that a reasonable law enforcement officer would have known that his challenged conduct was illegal. *Id.* In assessing the district court's disposition of these questions on appeal, our analysis proceeds *de novo*. *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1185 (10th Cir. 2001).

A

We begin with the first prong of the qualified immunity test by asking whether a reasonable jury could, viewing the facts in the light most favorable to Mr. Herrera, find that the deputies used excessive force in arresting him. "The Fourth Amendment forbids unreasonable seizures, including the use of excessive force in making an arrest." *Casey*, 509 F.3d at 1281. To determine whether the force used in a particular case is excessive, we must evaluate whether the officer's actions were "'objectively reasonable' in light of the facts and circumstances confronting them." *Graham v. Connor*, 490 U.S. 386, 397 (1989). To guide this inquiry, the Supreme Court has delineated three, non-exclusive factors: "[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396.

Before us, the deputies do not directly contest the district court's assessment on the second *Graham* factor that a jury could conclude that Mr. Herrera posed no immediate threat to the safety of the deputies. *See* Reply Br. at 6. Accordingly, for purposes of this appeal, we take that factor as weighing

- 6 -

in Mr. Herrera's favor. We reach the same conclusion with respect to the first *Graham* factor. At the time of his arrest, the crime Mr. Herrera was suspected of having committed was "resisting, evading or obstructing an officer," which in New Mexico is treated as a misdemeanor. N.M. Stat. § 30-22-1. Thus the deputies were not faced with someone who had committed a "severe" crime. *See Fisher v. City of Las Cruces*, 584 F.3d 888, 895 (10th Cir. 2009); *Casey*, 509 F.3d at 1281.

All that remains in dispute is the third *Graham* factor. On that score, Mr. Herrera claims that he neither evaded the deputies nor resisted their efforts to arrest him, yet in spite of this, as they arrested him, three deputies gang-tackled him and applied sufficient force to tear ligaments in his knee. Mr. Herrera emphasizes that, when the deputies instructed him to stop and threatened to shoot him if he did not, he promptly complied, lying face down on the ground with his arms and hands visibly extended. He adds that, at the time the deputies ordered him to stop, he was not running but simply walking through the field. And he claims that he never said anything to the deputies to suggest disobedience to their commands. To the contrary, his only complaint during the course of the arrest was that the deputies were hurting him, to which the deputies responded that he should "[s]hut up or you're going to make things worse for yourself." App. at 128. Viewing the evidence in the light most favorable to Mr. Herrera, we are obliged to take all of these facts as true.

In reply, the deputies argue that they reasonably, even if perhaps mistakenly, believed that Mr. Herrera was the person who had been hiding in Ms. Gallegos' bushes and who they had been chasing. For this reason, the deputies say they had reason to believe Mr. Herrera would continue to flee if they did not restrain him using some force. At the same time, the deputies acknowledge that, whatever apprehensions of possible flight might have existed when they first saw Mr. Herrera, by the time they allegedly gang-tackled Mr. Herrera further flight was no more than "certainly possible" and was "perhaps unlikely." Aplt. Opening Br. at 23.

We agree with the district court that this record is insufficient for us to hold as a matter of law, at this stage in the case, that the deputies are entitled to qualified immunity. The first two *Graham* factors weigh in favor of Mr. Herrera and so weigh in favor of a trial in this matter. The parties offer competing arguments from the undisputed facts concerning the third *Graham* factor. Ultimately, though, even the deputies concede flight was no more than possible and perhaps unlikely. In reaching the conclusion we do on the deputies' current appeal, we do not mean to suggest that the deputies will not ultimately be entitled to immunity. After trial, for example, a jury might choose to discredit certain of Mr. Herrera's factual assertions that we must take as true in this appeal. At this point, we simply hold that, on the record as it currently exists, we cannot say, as we must to grant summary judgment, that no reasonable jury could find that the

deputies' use of force was excessive.  Our result in this matter is compelled by and finds parallels in the precedents of this and our sister circuits.  *See, e.g., Dixon v. Richer*, 922 F.2d 1456, 1458-59, 1463 (10th Cir. 1991); *Smith v. Mattox*, 127 F.3d 1416, 1419-20 (11th Cir. 1997).[2]

B

Turning to the second prong of the qualified immunity test, we must ask whether, at the time of Mr. Herrera's arrest, the law clearly established that the gratuitous use of force against a person who is not resisting arrest violates the Fourth Amendment.  We have stated that, "[o]rdinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains."  *See Medina v. City & County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992), *overruled in part on other grounds by Williams v. City & County of Denver*, 99 F.3d 1009, 1014-15 (10th Cir. 1996).

As we have already suggested, this requirement is satisfied here.  In the *Dixon* case, for example, a plaintiff alleged that during an investigative stop, two deputies kicked him, struck him with a flashlight, and choked and beat him, even

---

[2] In a recent decision, this court suggested that when a plaintiff claims that officers used excessive force in the course of applying handcuffs, the plaintiff must demonstrate some non-*de minimis* injury in order to state a Fourth Amendment claim.  *See Fisher*, 584 F.3d at 897.  Mr. Herrera can easily satisfy this injury requirement as he sustained torn ligaments in his knee and a torn meniscus as a result of the force used to restrain and handcuff him.

though he had his hands up and was not making any aggressive moves or threats. 922 F.2d at 1463. Under these facts, we held that the deputies were not entitled to qualified immunity on plaintiff's excessive force claim, because "the alleged conduct is not objectively reasonable under the Fourth Amendment." *Id.* We discern no basis for reaching a different result here.

Cases from other jurisdictions, handed down prior to Mr. Herrera's arrest, confirm the point. For example, in *Mattox*, the plaintiff initially threatened a police officer with a baseball bat and then fled from him. 127 F.3d at 1418. But once the officer caught up to the plaintiff and ordered him to "get down," the plaintiff "docilely submitted to arrest." *Id.* When the officer put his knee on the plaintiff's lower back and pulled the plaintiff's left arm to handcuff him, the plaintiff complained, and in response, the officer grunted and broke the plaintiff's arm. *Id.* The Eleventh Circuit held that the officer was not entitled to qualified immunity on plaintiff's excessive force claim, because "assuming as we must that [the plaintiff] was offering no resistance *at all*, the considerable effort and force inferable from the grunt, [the plaintiff's] sensation of a blow, and the broken arm [were] obviously unnecessary to restrain even a previously fractious arrestee." *Id.* at 1420; *cf. Blankenhorn v. City of Orange*, 485 F.3d 463, 481 (9th Cir. 2007) ("[G]ang-tackling without first attempting a less violent means of arresting a relatively calm trespass suspect – especially one who had been cooperative in the

past and was at the moment not actively resisting arrest – was a violation of that person's Fourth Amendment rights.").

*Affirmed.*

ENTERED FOR THE COURT


Neil M. Gorsuch
Circuit Judge