[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-11854
Non-Argument Calendar
_____

D.C. Docket No. 1:11-cv-23754-PAS

LUCIUS WORDLEY,

Plaintiff - Appellant,

versus

OFFICER PABLO SAN MIGUEL,
Badge #8039-43,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(May 23, 2014)

Before WILSON, JORDAN and ANDERSON, Circuit Judges.

PER CURIAM:

Lucius Wordley, a state prisoner proceeding *pro se*, appeals the district court's dismissal, on grounds of qualified immunity, of his 42 U.S.C. § 1983 suit against Metro-Dade Police Officer Pablo San Miguel. Mr. Wordley alleged in his complaint that Officer San Miguel used excessive force against him during an arrest, resulting in his broken finger. We affirm.

## I.[1]

According to Mr. Wordley, on the afternoon of Friday, April 8, 2011, he and his minor nephew got into a verbal argument at the residence Mr. Wordley shared with his mother. This argument turned into a physical altercation, prompting Mr. Wordley to leave the home to avoid any further incidents with his nephew. Mr. Wordley returned to his residence that same evening around midnight. After he entered the house, his security alarm company called twice for security checks and he told them that everything was fine.

Shortly thereafter, Mr. Wordley saw Officer San Miguel—who had been dispatched to the residence—come around the side of the house, pointing a gun at him. Using several expletives, Officer San Miguel ordered Mr. Wordley on the ground. Mr. Wordley complied with Officer San Miguel's order and told him "that [he] was down and [he] was not moving." *See* D.E. 1 at 9. Officer San Miguel then

---

[1] Unlike the district court, we do not consider the events described in the police reports attached to Officer San Miguel's motion to dismiss. Given what Mr. Wordley alleged, we cannot say that the events referenced in the reports—even if central to Mr. Wordley's claim—are undisputed.

placed his knee on the middle of Mr. Wordley's back and grabbed his left hand and put it behind his back. Officer San Miguel then reached for Mr. Wordley's right hand, but was obstructed by the leg of an adjacent table. Despite Mr. Wordley's pleadings for him to stop, Officer San Miguel continued to twist Mr. Wordley's left hand while trying to reach his right hand. Mr. Wordley felt "a sharp pain and heard [his] finger pop" as Officer San Miguel placed the handcuffs on both hands. *See id.*

Mr. Wordley was taken to the police station, during which time he repeatedly requested medical assistance. While at the station, Mr. Wordley asked Officer San Miguel why he broke his finger, to which Officer San Miguel responded by telling him to "shut up" and "plac[ing] his hand around [Mr. Wordley's] neck in a choking position." *See id.* at 10.[2] Eventually, another officer at the station called 9-1-1. The responding paramedics stated that the finger was likely broken, a diagnosis which was confirmed later at the hospital, where Mr. Wordley was also informed that surgery would be necessary to repair the broken finger.

Declining to adopt the magistrate judge's report, the district court granted Officer San Miguel's motion to dismiss with prejudice, concluding that Mr. Wordley did not meet his burden of establishing that qualified immunity should

---

[2] Mr. Wordley did not make any claims in his complaint regarding the alleged "choking" by Officer San Miguel.

not apply. Specifically, the district court ruled that Mr. Wordley did not "establish that case law, at the time of the incident, clearly established that [Officer San Miguel] was using excessive force," nor did his complaint "fall within the narrow exception when there is an absence of case law." *See* D.E. 23 at 5-6.

## II.

We review *de novo* a district court's grant of a motion to dismiss under Rule 12(b)(6), "accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff." *Leib v. Hillsborough Cnty. Pub. Transp. Comm'n*, 558 F.3d 1301, 1305 (11th Cir. 2009). The facts as pleaded must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).[3]

Qualified immunity is "an immunity from suit, rather than merely a defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (internal emphasis omitted). It "protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Andujar v. Rodriguez*, 486 F.3d 1199, 1202 (11th Cir. 2007) (citation omitted). To be entitled to qualified immunity, a defendant must first establish that he was acting within the scope of his discretionary authority, meaning the

---

[3] As Mr. Wordley is proceeding *pro se*, his pleadings are liberally construed. *See Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998).

4

government employee must have been performing a legitimate job-related function, or pursuing a job-related goal, through means that were within the official's power to utilize. *See Mathews v. Crosby*, 480 F.3d 1265, 1269 (11th Cir. 2007); *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004).

Once the defendant has established that he was acting within his discretionary authority, "the burden shifts to the plaintiff to show that qualified immunity is not appropriate," *Mathews*, 480 F.3d at 1269, by showing: "(1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." *Holloman*, 370 F.3d at 1264. We may consider these two prongs of the qualified immunity analysis in any order. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

From the record, it is clear that Officer San Miguel was acting within his discretionary authority in arresting Mr. Wordley after being dispatched to his home, and Mr. Wordley does not claim that Officer San Miguel lacked probable cause for the arrest. The burden, therefore, shifts to Mr. Wordley to show that Officer San Miguel violated a clearly established right by injuring his finger while twisting his hand to secure handcuffs during the arrest.

Even if Officer San Miguel's actions did constitute excessive force in violation of the Fourth Amendment, Mr. Wordley has not shown that the rights

5

allegedly deprived were clearly established at the time of the incident. In order to demonstrate that a right has been clearly established, a plaintiff may: (1) show that a materially similar case has already been decided; (2) identify a "broader, clearly established principle [that] should control the novel facts [of the] situation"; or (3) argue that the conduct at issue so obviously violated the constitution that existing case law is unnecessary. *See Loftus v. Clark-Moore*, 690 F.3d 1200, 1204-05 (11th Cir. 2012). Mr. Wordley has not presented a "materially similar" case which would put Officer San Miguel on notice that his conduct was unlawful. Understanding the need to balance the potential intrusion on an individual's rights against countervailing governmental interests, "Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396 (1989). "We do not use hindsight to judge the acts of police officers," *Rodriguez v. Farrell*, 280 F.3d 1341, 1351 (11th Cir. 2002), and "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers . . . violates the Fourth Amendment." *Graham*, 490 U.S. at 396 (internal citation omitted).

In *Rodriguez,* the officer's conduct during an arrest aggravated the plaintiff's pre-existing injury, resulting in more than twenty-five subsequent surgeries and the eventual amputation of the plaintiff's arm. We held that, despite the gravity of this

injury, the force used by the officer did not rise to the level of a constitutional violation because he had used an otherwise "common non-excessive handcuffing technique," and had no knowledge of the plaintiff's pre-existing condition. *Rodriguez*, 280 F.3d at 1351. Similarly, here, we carefully consider the circumstances surrounding the arrest and do not rely solely on an ex post assessment of the resulting injury. Although unfortunate, Mr. Wordley's injury occurred while Officer San Miguel attempted to secure handcuffs during the normal course of an arrest, and therefore, Officer San Miguel was not put on notice—particularly in light of *Rodriguez*—that his actions were potentially unlawful.

In support of his claim, Mr. Wordley cites to *Smith v. Mattox*, 127 F.3d 1416 (11th Cir. 1997), a case which helps define the less-than-clear line between excessive and acceptable force. In *Smith*, the officer placed his knee on the plaintiff's back and pulled his left arm behind his back to secure handcuffs during an arrest. This put the plaintiff's forearm into a position that caused him discomfort. When the plaintiff complained, the officer then, "with a grunt and a blow," broke the plaintiff's arm. *Id.* at 1418. We found that this was a "very close case" and the officer's conduct "barely" reached beyond the "hazy border between excessive and acceptable force." *Id.* at 1419. Specifically, "the grunt and the blow that [the plaintiff] assert[ed] that he heard and felt while [the officer] was on [the

7

plaintiff's] back, coupled with the severity of [the plaintiff's] injury, push[ed] this case over the line." *Id.* Although there are some similarities between the facts alleged by Mr. Wordley and the events in *Smith*, that case cannot be considered fair notice to Officer San Miguel. Here, Officer San Miguel's twisting of Mr. Wordley's hand while applying handcuffs during arrest lacks the gratuitous, separate blow that pushed—just barely—the officer's actions in *Smith* over the line between permissible and prohibited force. *See id.* Given *Rodriguez* and *Smith*, even if Officer San Miguel's actions constituted excessive force, the potential constitutional violation at issue was not clearly established by existing case law at the time of Mr. Wordley's arrest.

Nor has Mr. Wordley shown that, even in the absence of case law, Officer San Miguel's conduct "lies to so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to [him]." *Priester*, 208 F.3d at 926. This standard, which "entails determining whether 'application of the [excessive force] standard would inevitably lead every reasonable officer in [the Defendants'] position to conclude the force was unlawful,'" *id.* at 926-27 (alterations in original), has not been met here.

### III.

We affirm the district court's order of dismissal based on qualified immunity.

**AFFIRMED.**