[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-11048
Non-Argument Calendar
_____

D.C. Docket No. 9:16-cv-80455-RLR


REBECCA K. HABERSKI,

Plaintiff - Appellee,

versus

ANDREA BUFANO,
Individually, in his capacity as a Deputy Sheriff for the Palm Beach County
Sheriff's Office,

Defendant - Appellant,

WILLIAM HERNANDEZ,
Individually, in his capacity as a police officer for Florida Atlantic University,

Defendant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(March 13, 2018)

Before MARTIN, JILL PRYOR, and EDMONDSON, Circuit Judges.


PER CURIAM:


In this interlocutory appeal, Defendant Palm Beach County Deputy Sheriff Andrea Bufano appeals the district court's denial of his motion for summary judgment in Plaintiff Rebecca Haberski's civil action under 42 U.S.C. § 1983 and Florida law.  In pertinent part, Plaintiff asserts against Deputy Bufano in his individual capacity (1) a claim for excessive force, in violation of the Fourth Amendment and (2) state law claims for assault and battery and for intentional infliction of emotional distress.  The district court denied Deputy Bufano's motion for summary judgment on these claims, concluding that Deputy Bufano was unentitled either to qualified immunity on the Fourth Amendment claim or to statutory immunity on the state law claims.  No reversible error has been shown; we affirm.[1]

---

[1] The district court granted Officer William Hernandez's motion for summary judgment. Plaintiff's claims against Officer Hernandez are not before us on appeal.

2

Background:

The supposed facts, when the record is viewed in the light most favorable to Plaintiff, are as follows.  On the afternoon of 11 September 2015, Plaintiff -- a student at Florida Atlantic University ("FAU") -- was at a tailgate party outside the FAU football stadium.  Plaintiff describes the atmosphere as having been loud with "a lot of people" and music playing.

Plaintiff became involved in a verbal exchange with her then-boyfriend, who was a member of the FAU basketball team and who was standing with some of his teammates.  Plaintiff says neither she nor her boyfriend was yelling or speaking in raised voices.  As the couple was talking, three of the boyfriend's teammates began physically pushing Plaintiff and telling her to go away.  Plaintiff asked her boyfriend for help and also yelled at the teammates to stop pushing her.

FAU security officers -- including Officer Hernandez and three other officers -- intervened.  The officers told Plaintiff's boyfriend and his teammates to leave the area.  The officers also pulled Plaintiff to the side, explaining they were concerned for her safety.

When Plaintiff's boyfriend was no longer in sight, Plaintiff says one of the FAU officers told her she could leave.  Plaintiff started to walk away, but Officer Hernandez stepped in front of her and told her he had not yet given her permission

3

to leave.  Plaintiff attempted to walk away a second time, and Officer Hernandez again blocked her path.  As Plaintiff stepped forward, she bumped into Officer Hernandez with her shoulder.  Officer Hernandez then verbally accused Plaintiff of chest bumping him, which Plaintiff denied.

Deputy Bufano then approached Plaintiff, said "Okay that's enough," grabbed Plaintiff's left arm, and began escorting her away.  Officer Hernandez took hold of Plaintiff's right arm and assisted Deputy Bufano in leading Plaintiff away from the crowd.  Plaintiff asked Deputy Bufano what he was doing and told him that she was not under arrest, to which Deputy Bufano responded, "well, you are now."

As Deputy Bufano and Officer Hernandez escorted Plaintiff across the parking lot, Plaintiff says she was compliant, did not resist physically, and did not yell or say anything.  In his police report, Officer Hernandez confirmed that Plaintiff "was compliant and didn't resist our efforts to escort her from the area." A Use of Force Report, prepared by Deputy Bufano's superior officer also documents that Plaintiff "was not resisting Bufano at the time the incident occurred."  Plaintiff did, however, tell Deputy Bufano that he was hurting her and to loosen his grip on her arm.  Deputy Bufano, however, maintained his grip.

Moments later -- and less than a minute after Deputy Bufano first grabbed Plaintiff's arm -- Plaintiff's left arm broke above the elbow.  Both Officer

4

Hernandez and Deputy Bufano heard a "popping sound" as Plaintiff's arm broke. Plaintiff began screaming in pain, said "I can't feel my arm," and fell to her knees. The officers lowered Plaintiff face-down onto a grassy area. Deputy Bufano continued to hold Plaintiff's now-broken arm as he pinned her down on the ground. Plaintiff begged Deputy Bufano to get off, telling him that he was hurting her. Deputy Bufano refused and told Plaintiff that she was not free to go.

Paramedics arrived, and Plaintiff was taken to the hospital. An orthopedic surgeon diagnosed Plaintiff with a spiral fracture and opined that -- given the relative strength of Plaintiff's bones -- such an injury would have required a "significant amount of force."

While at the hospital, Officer Hernandez told Plaintiff she was under arrest. Plaintiff was charged with battery on a law enforcement officer and resisting arrest without violence. Later that same night -- after escorting Plaintiff back to the FAU campus -- Officer Hernandez told Plaintiff that she was no longer under arrest and was free to go.

Fourth Amendment Excessive Force:

We review de novo a district court's denial of a motion for summary judgment based on qualified immunity, "drawing all inferences and viewing all of

5

the evidence in a light most favorable to the nonmoving party." Gilmore v.

Hodges, 738 F.3d 266, 272 (11th Cir. 2013).

"Qualified immunity offers complete protection for government officials

sued in their individual capacities if their conduct 'does not violate clearly

established statutory or constitutional rights of which a reasonable person would

have known.'" Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002). "When

properly applied, [qualified immunity] protects 'all but the plainly incompetent or

those who knowingly violate the law.'" Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2085

(2011).

To avoid summary judgment based on qualified immunity, a plaintiff must

show both that the defendant violated a constitutional right and that the right was

already clearly established -- given the circumstances -- when defendant acted.

Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002). A federal right is "clearly

established" when "the contours of [the] right are sufficiently clear that every

reasonable official would have understood that what he is doing violates that

right." al-Kidd, 131 S. Ct. at 2083 (quotations omitted). "We do not require a case

directly on point, but existing precedent must have placed the statutory or

constitutional question beyond debate." Mullenix v. Luna, 136 S. Ct. 305, 308

(2015) (emphasis added). In determining whether the law is clearly established,

courts must consider "whether the violative nature of particular conduct is clearly

6

established . . . in the light of the specific context of the case, not as a broad general proposition." Id. (emphasis in original).

"Although suspects have a right to be free from force that is excessive, they are not protected against a use of force that is necessary in the situation at hand." Jean-Baptiste v. Gutierrez, 627 F.3d 816, 821 (11th Cir. 2010) (quotation omitted). In deciding the merits of a claim for excessive force, we must determine whether -- given all the facts and circumstances of a particular case -- the force used was "reasonable" under the Fourth Amendment. Graham v. Connor, 109 S. Ct. 1865, 1871-72 (1989).

"In determining the reasonableness of force applied, we look at the fact pattern from the perspective of a reasonable officer on the scene with knowledge of the attendant circumstances and facts, and balance the risk of bodily harm to the suspect against the gravity of the threat the officer sought to eliminate." McCullough v. Antolini, 559 F.3d 1201, 1206 (11th Cir. 2009). "[T]he force used by a police officer in carrying out an arrest must be reasonably proportionate to the need for that force, which is measured by the severity of the crime, the danger to the officer, and the risk of flight." Lee, 284 F.3d at 1198 (citing Graham, 109 S. Ct. at 1872). We stress that "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 109 S. Ct. at 1872.

7

Viewing the facts in the light most favorable to Plaintiff, Deputy Bufano violated Plaintiff's constitutional rights that were already clearly established when Deputy Bufano acted.  The district court determined that probable cause existed to arrest Plaintiff for battery on a law enforcement officer and for disobeying a lawful order.[2] Given the supposed facts, Plaintiff, however, had engaged in no violent or physically aggressive behavior that would have justified a substantial use of force. Moreover, when Deputy Bufano broke Plaintiff's arm and pinned Plaintiff to the ground, Plaintiff was neither resisting the officers nor attempting to flee; and she posed no threat to the safety of the officers or to others.

By 2015, our precedent was clear -- such that all reasonable officers must have understood -- that Deputy Bufano's use of force against Plaintiff constituted excessive force in violation of the Fourth Amendment.  "[U]nprovoked force against a non-hostile and non-violent suspect who has not disobeyed instructions violates that suspect's rights under the Fourth Amendment." Fils v. City of Aventura, 647 F.3d 1272, 1288-89 (11th Cir. 2011) (tasing an unrestrained arrestee who had committed a non-serious offense, who posed no threat to the safety of the officer or to others, who had disobeyed no orders, and who was not resisting arrest or attempting to flee constituted excessive force); see also Hadley v. Gutierrez, 526 F.3d 1324, 1330 (11th Cir. 2008) (officer's single punch to the stomach of a non-

---

[2] The district court's ruling on Plaintiff's false arrest claim is not before us in this interlocutory appeal.

8

resisting, handcuffed arrestee constituted excessive force); Priester v. City of Riviera Beach, 208 F.3d 919, 927 (11th Cir. 2000) (allowing for two minutes a police dog to attack and to bite plaintiff -- a burglary suspect who was not yet handcuffed, but who had complied with officers' orders, posed no threat of bodily harm to the officers, and had made no attempt to flee or to resist arrest -- was an unconstitutionally excessive use of force).

In Smith v. Maddox, we concluded that an officer used constitutionally excessive force when he broke the arm of a suspect who was offering no resistance. 127 F.3d 1416, 1419-20 (11th Cir. 1997). When the suspect in Smith was first approached by the officer, he raised a "baseball bat in a threatening posture," refused to comply with the officer's commands to drop the bat, and ran away from the officer. Id. at 1418. In the light of the suspect's conduct, we said that an objectively reasonable officer could have believed that "some force" was necessary to handcuff the suspect. Id. at 1419-20. We concluded, however, that the considerable amount of force necessary to break the suspect's arm was constitutionally unreasonable given that -- when the force was applied -- the suspect "was offering no resistance *at all.*" Id. at 1420 (emphasis in original).

Like the suspect in Smith, Plaintiff offered no resistance when Deputy Bufano broke her arm and pinned her to the ground. In addition -- unlike the suspect in Smith -- Plaintiff had engaged in no earlier serious threatening conduct,

9

had obeyed the officers' instructions, and had made no attempts to flee.  Given our already established precedent, we conclude that every reasonable officer in Deputy Bufano's position would have known that applying the amount of force necessary to break Plaintiff's arm was a violation of Plaintiff's constitutional rights.

On this record, Deputy Bufano (for now at least) is unentitled to qualified immunity from Plaintiff's claims for excessive force under the Fourth Amendment.


State Law Claims:


Under Florida law, an officer cannot be held liable for acts committed within the scope of his employment unless he "acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property."  Fla. Stat. § 768.28(9)(a).

"A battery claim for excessive force is analyzed by focusing upon whether the amount of force used was reasonable under the circumstances."  City of Miami v. Sanders, 672 So. 2d 46, 47 (Fla. Dist. Ct. App. 1996).  An officer is immune from an excessive use of force claim when he "reasonably believes the force to be necessary to defend himself or another from bodily harm while making the arrest." Id. (alteration omitted).

10

To prove a claim for intentional infliction of emotional distress under Florida law, a plaintiff must prove "(1) deliberate or reckless infliction of mental suffering; (2) outrageous conduct; (3) the conduct caused the emotional distress; and (4) the distress was severe." Liberty Mut. Ins. Co. v. Steadman, 968 So. 2d 592, 594 (Fla. Dist. Ct. App. 2007). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." Metro. Life Ins. Co. v. McCarson, 467 So. 2d 277, 278-79 (Fla. 1985). Whether conduct is sufficiently outrageous to rise to the level of intentional infliction of emotional distress is a question of law. Steadman, 968 So. 2d at 595.

Viewing the facts in the light most favorable to Plaintiff, we have already concluded that the degree of force used by Deputy Bufano against Plaintiff was constitutionally unreasonable under the circumstances. We are also persuaded that Deputy Bufano's conduct evidences sufficiently that he acted with a wanton and willful disregard of human rights. In particular, we are troubled by Deputy Bufano's continuing to grip Plaintiff's broken arm and pinning her to the ground after Deputy Bufano heard a popping sound and after Plaintiff screamed in pain, said she could not feel her arm, and begged Deputy Bufano to get off because he was hurting her. See Thompson v. Douds, 852 So.2d 299, 309 (Fla. Dist. Ct. App. 2003) (backup officers called to assist a man in need of medical attention acted

11

with wanton and willful disregard of human rights -- and, thus, were unentitled to immunity under Fla. Stat. § 768.28(9)(a) -- when they delivered "knee blasts," used "pain compliance techniques," and continued to pin the man down on the ground after he was restrained).  At this stage in the proceedings, we agree with the district court's determination that Deputy Bufano is unentitled to immunity on Plaintiff's state law claims.

AFFIRMED.