[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 27, 2009
THOMAS K. KAHN
CLERK

_____

No. 07-11205

_____

D. C. Docket No. 05-00767-CV-J-33-HTS

ORVEL W. LLOYD,

Plaintiff-Appellant,

versus

VAN TASSELL, Deputy, in his individual and
official capacities,

Defendant,

CLARENCE JAKE CARD, in his individual and
official capacities,
RAY GEIGER, Sheriff, in his individual and
official capacities,
NURSE O'QUINN, in her individual and official
capacities,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(January 27, 2009)

Before DUBINA and CARNES, Circuit Judges, and RESTANI,[*] Judge.

PER CURIAM:

Orvel Winston Lloyd, a state prisoner who originally proceeded *pro se*, but for whom we later appointed counsel, appeals the district court's grant of summary judgment to the defendants in his 42 U.S.C. § 1983 action challenging actions allegedly taken during and after his arrest in Nassau County, Florida, and the dismissal of his related state law claims. Construed liberally, Lloyd argues, among other things, that the district court erred when it granted summary judgment on his excessive force claim against Deputy Clarence Card, his deliberate indifference claim against Nurse O'Quinn, and his excessive force claim against Sheriff Ray Geiger, in Geiger's individual, supervisory, and official capacities.[1]

_____

[*]Honorable Jane Restani, United States Court of International Trade Chief Judge, sitting by designation.

[1]Lloyd also argues that the district court erred in awarding costs to O'Quinn and Geiger, in an order that was entered after his notice of appeal. However, we dismiss this claim for lack of jurisdiction because he did not designate that order in his notice of appeal or file a subsequent notice of appeal regarding the award of costs. *See* Fed.R.App.P. 3(c)(1)(B); *Bogle v. Orange County Bd. Of County Com'rs.*, 162 F.3d 653, 662 (11th Cir. 1998).

I.

We review *de novo* the district court's grant of a motion for summary judgment, viewing all evidence and factual inferences in the light most favorable to the nonmoving party. *Turnes v. AmSouth Bank, N.A.*, 36 F.3d 1057, 1060 (11th Cir. 1994). We may affirm the district court's grant of summary judgment on any adequate ground supported by the record. *Smith v. Allen*, 502 F.3d 1255, 1280 (11th Cir. 2007).

"Summary judgment is appropriate where the evidence shows 'that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Comer v. City of Palm Bay, Fla.*, 265 F.3d 1186, 1192 (11th Cir. 2001) (citing Fed.R.Civ.P. 56(c)). "Genuine disputes are those in which the evidence is such that a reasonable jury could return a verdict for the non-movant. For factual issues to be considered genuine, they must have a real basis in the record." *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996) (quoting *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 919 (11th Cir. 1993)). It is improper for a district court to make credibility determinations on a motion for summary judgment. *Miller v. Harget*, 458 F.3d 1251, 1256 (11th Cir. 2006).

On a motion for summary judgment, the district court may properly consider items presented by a party that would be admissible in evidence, which may

include a plaintiff's sworn complaint. Fed.R.Civ.P. 56(e); *see Washington v. Dugger*, 860 F.2d 1018, 1019 (11th Cir. 1988) (listing types of evidence appropriate for consideration on summary judgment). Accordingly, we cannot consider hearsay when reviewing a summary judgment order unless it would be admissible at trial for some purpose. *Macuba v. Deboer*, 193 F.3d 1316, 1323 (11th Cir. 1999).

A constitutional excessive force claim based on conduct occurring during the course of an arrest is analyzed on the merits under the Fourth Amendment's "reasonableness" standard. *See Graham v. Connor*, 490 U.S. 386, 394–95, 109 S. Ct. 1865, 1871, 104 L. Ed. 2d 443 (1989). The "inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397, 109 S. Ct. at 1872. In determining whether the use of force was reasonable, factors to consider include: (1) "the severity of the crime at issue"; (2) "whether the suspect poses an immediate threat to the safety of the officers or others"; and (3) "whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396, 109 S. Ct. at 1872. We also consider the need for the application of force, the relationship between the need and the amount of force used, and the extent of the injury

4

inflicted. *Lee v. Ferraro*, 284 F.3d 1188, 1198 (11th Cir. 2002).

"Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396, 109 S. Ct. at 1871-72. Accordingly, the use of *de minimis* force, without more, will not support a claim of excessive force. *Nolin v. Isbell*, 207 F.3d 1253, 1257 (11th Cir. 2000).

The extent of injury is not determinative, because reasonable force does not become excessive merely because it aggravates a pre-existing condition of which the officer was unaware. *Lee*, 284 F.3d at 1200. Conversely, objectively unreasonable force does not become reasonable or *de minimis* merely because the plaintiff only suffered minimal harm. *Id.* In addition, we have noted that force is more likely to be unlawful if it occurred after a suspect was already secured, the arrest effected, and danger vitiated, as opposed to force that occurred while the officer was still securing a suspect. *Id.* at 1199–1200.

A defendant may also seek summary judgment on the ground that he is entitled to qualified immunity. *Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11th Cir. 2004). The qualified immunity analysis is conceptually distinct from the analysis of the merits of the claim. *Marsh v. Butler County, Ala.*, 268 F.3d 1014,

5

1030 n.8 (11th Cir. 2001). Even if a plaintiff presents evidence to support a § 1983 claim on the merits, a defendant sued in his individual capacity may be entitled to qualified immunity. *Id.* at 1030. "To be eligible for qualified immunity, the official must first establish that he was performing a 'discretionary function' at the time of the alleged violation of federal law occurred." *Crosby*, 394 F.3d at 1332. The court must consider the threshold question of whether the facts alleged in the plaintiff's complaint, taken in the light most favorable to the plaintiff, show a violation of a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156, 150 L. Ed. 2d 272 (2001). If the complaint alleges a constitutional violation, then the court must consider whether the constitutional right allegedly violated was clearly established at the time of the violation. *Id.* A plaintiff may prove that right was clearly established in one of two ways: (1) identify a materially similar case where the officer's action was unlawful; or (2) show that the general standards are so clear that they would lead all reasonable officers in the defendant's position to conclude that the force was unlawful. *Lee*, 284 F.3d at 1198–99. The purpose of this second inquiry is to ensure that the defendant had fair and clear notice that his action was unconstitutional. *Marsh*, 268 F.3d at 1031.

A defendant was performing a discretionary function if the acts he undertook

fell within his job responsibilities. *Crosby*, 394 F.3d at 1332. An arrest is within the official duties of a sheriff's deputy. *Id.*

In *Lee*, an officer pulled a woman over for improperly honking her horn, and he pulled her out of her vehicle and handcuffed her. *Lee*, 284 F.3d at 1198. Although the woman then posed no risk to the officer or risk of flight, and she was already subdued and arrested, the officer slammed her head against the trunk of her car. *Id.* This constituted excessive force, and the officer was not entitled to qualified immunity because law was clearly established on the point. *Id.* at 1198–99. In determining that qualified immunity was not available, we stated "the clear and obvious principle that once an arrest[ee] has been fully secured and any potential danger or risk of flight vitiated, a police officer cannot employ the severe and unnecessary force allegedly used here." *Id.* at 1200.

Viewing the evidence in the light most favorable to Lloyd, we conclude that material facts were disputed regarding the merits of Lloyd's excessive force claim against Card. Lloyd presented an admissible personal statement, under penalty of perjury, that the vehicle in which he was riding did not flee the deputies prior to his arrest, he did not attempt to flee after being pulled over, disobey the deputies' orders, or resist arrest. In addition, he stated that Card jumped on his head after he was handcuffed, while he was lying on the ground, which broke his nose. This

evidence, and some corroborating affidavits, pictures, and a medical report, created factual issues regarding the circumstances that led to Lloyd's nose injury, and the extent of that injury.

The aforementioned evidence was material to the extent it supports a finding of excessive force. Although Lloyd's arrest involved a serious crime and a potentially dangerous situation for the deputies, Lloyd presented evidence that the application of force was objectively unreasonable because it came after he already was subdued and handcuffed, and he did not resist. Accordingly, we conclude that the district court erred in granting summary judgment to Card on the merits of this claim.

In addition, we conclude that the district court erred in granting qualified immunity to Card on this claim. Although Card's alleged action involved a discretionary function because making an arrest is part of a deputy's duties, it would amount to a constitutional violation because it tended to establish an objectively unreasonable amount of force, as discussed above. In addition, the alleged circumstances surrounding the use of force and our prior case-law make clear that this alleged use of force violated Lloyd's clearly established rights. Thus, the district court erred in finding that Card was entitled to qualified immunity and summary judgment on Lloyd's excessive force claim.

8

II.

A prisoner may recover on the merits in a § 1983 action by showing that prison medical officials were deliberately indifferent to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104–05, 97 S. Ct. 285, 291, 50 L. Ed. 2d 251 (1976). A pre-trial detainee is protected from deliberate indifference by the Due Process Clause of the Fourteenth Amendment whereas a prisoner is protected by the Eighth Amendment. *See Harris v. Coweta County*, 21 F.3d 388, 393 n.6 (11th Cir. 1994). The analysis is the same, however, under either provision. *See id.*

"To show that a prison official acted with deliberate indifference to serious medical needs, a plaintiff must satisfy both an objective and a subjective inquiry." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003). A plaintiff first must "set forth evidence of an objectively seriously medical need," and second, he must "prove that the prison official acted with an attitude of 'deliberate indifference' to that serious medical need." *Id.*

A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994)). In either situation, the serious medical need must be one that poses a substantial risk of serious harm if

left unattended. *Id.* at n.13. We have noted that broken bones and bleeding cuts are serious medical needs that require medical attention within hours. *Harris*, 21 F.3d at 394. Even for lesser injuries, which are still serious medical needs, this circuit's law is "clearly established that several weeks [is] too long to fail to properly respond to the medical need." *Id.*

In order to prove that a prison official acted with deliberate indifference, he must show: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) [] conduct that is more than mere negligence." *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004). Conduct that is more than mere negligence includes: (1) grossly inadequate care; (2) a decision to take an easier but less efficacious course of treatment; (3) medical care that is so cursory as to amount to no treatment at all; (4) a failure or refusal to treat; or (5) a delay in treatment. *Id.*; *Farrow*, 320 F.3d at 1246. Deliberate indifference must be more than a medical judgment call or an accidental or inadvertent failure to provide adequate medical care. *Estelle*, 429 U.S. at 105–06, 97 S. Ct. at 291–92. If the dispute is over the adequacy of medical care provided, a court will be hesitant to question the medical judgments made. *Harris v. Thigpen*, 941 F.2d 1495, 1507 (11th Cir. 1991).

The record demonstrates that Lloyd failed to adequately present evidence to support his claim of deliberate indifference against O'Quinn. Accordingly, we

conclude that the district court correctly granted summary judgment to O'Quinn on Lloyd's deliberate indifference claim.

## III.

In order to prevail on the merits in a § 1983 action against a defendant in his individual capacity, the plaintiff generally must show that he was personally involved in acts or omissions that resulted in the constitutional deprivation. *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995). "[S]upervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (quoting *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999)).

A supervisor may be individually liable under § 1983 only when: (1) "the supervisor personally participates in the alleged unconstitutional conduct"; or (2) "there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." *Id.* A causal connection is established when: (1) the supervisor was on notice, by a history of widespread abuse, of the need to correct a practice that led to the alleged deprivation, and he failed to do so; (2) the supervisor's policy or custom resulted in deliberate indifference; (3) the supervisor directed the subordinate to act unlawfully; or (4) the supervisor knew the

11

subordinate would act unlawfully and failed to stop the unlawful action. *Id.* "The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990).

In order to be held liable under § 1983 in an official capacity, the plaintiff must show that the deprivation of a constitutional right resulted from: "(1) an action taken or policy made by an official responsible for making final policy in that area of the [County's] business; or (2) a practice or custom that is so pervasive, as to be the functional equivalent of a policy adopted by the final policymaker." *Church v. City of Huntsville*, 30 F.3d 1332, 1343 (11th Cir. 1994). Only a final policymaker may be held liable in an official capacity. *Id.* at 1342. This is similar to the standard used for imposing supervisor liability, although the plaintiff must also prove that the defendant was a policymaker. Also, the qualified immunity defense does not apply to an official sued in his official capacity. *Bruce v. Beary*, 498 F.3d 1232, 1249 n.33 (11th Cir. 2007).

Even assuming that Card used excessive force on Lloyd during his arrest, Lloyd did not present admissible evidence to support his claim that Geiger should be liable.[2] First, Lloyd did not present any admissible evidence that Geiger was

---

[2] Lloyd's primary argument against summary judgment for Sheriff Geiger on the excessive force claim is that during the incident Card supposedly said that Geiger had told him

12

personally involved in the alleged use of excessive force on him. Second, Lloyd did not present any evidence that Geiger was on notice regarding the need to prevent Card from using excessive force or that he failed, as a supervisor, to do so. The district court correctly found that Card had not engaged in abuses sufficient to notify Geiger that he needed to prevent Card's use of excessive force.

Additionally, Lloyd did not present evidence that Geiger had a policy or custom of allowing Card or any other deputy to use excessive force. Evidence showed that Geiger had an official policy barring the use of excessive force, and when an alleged incident occurred, it was investigated. Because no evidence demonstrated a causal connection between Geiger's actions as supervisor and the alleged excessive force used on Card, the district court did not err in finding that no admissible evidence supported the imposition of individual liability on Geiger as a supervisor.

Finally, even assuming that Geiger was a policymaker, the district court correctly rejected Lloyd's claim against Geiger in his official capacity for the same reasons regarding custom and policy discussed above. We affirm the district court

---

to kill Lloyd. While the statement is admissible against Card under Fed. R. Evid. 801(d)(2), it is inadmissible hearsay as to Geiger. The best argument Lloyd has for the admissibility of Card's statement against Geiger is under Rule 801(d)(2)(D), but that argument fails because a directive to kill a suspect is not properly "within the scope of the agency or employment" of a deputy sheriff.

13

on this issue.[3]

## IV.

If a district court does not consider pendent state law claims for a lack of jurisdiction, and as a result of an appeal the court would have jurisdiction over the state law claims, then remand for disposition of the claims is appropriate. *Sims v. Young*, 556 F.2d 732, 735 (5th Cir. 1977)[4].

A district court generally may exercise jurisdiction over pendent state law claims and parties if the claims arise from the same "nucleus of operative fact" as a non-frivolous federal claim against another party. *See Hiram Walker & Sons, Inc. v. Kirk Line*, 877 F.2d 1508, 1512 (11th Cir. 1989). If we reverse the district court's grant of summary judgment on an anchor federal claim, and that reversal would give the district court jurisdiction over a dismissed pendent state law claim, then it may be appropriate to reinstate the pendent state law claim. *See Johnson v. Booker T. Washington Broadcasting Service, Inc.*, 234 F.3d 501, 504–05 (11th Cir. 2000).

---

[3] We have reviewed the record and the parties' briefs and we discern no error in the court's grant of summary judgment on Lloyd's remaining federal claims, which included: (1) his due process claim against Card regarding the theft of $4,000 during his arrest; (2) his claim against Geiger regarding deliberate indifference to a serious medical need; and (3) his due process claim against Geiger regarding false statements made to the press.

[4] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to October 1, 1981.

As discussed above, the district court erred in granting summary judgment on one of Lloyd's claims. To the extent that the dismissed state law claims do not arise from the same nucleus of operative fact as the federal claim that remains on remand, then those state law claims were properly dismissed. However, to the extent that the district court dismissed Lloyd's state law claims that arise from the same nucleus of facts as the remaining federal law claim, we reverse that decision and remand for further proceedings. Accordingly, on remand the district court should consider which state law claims it has jurisdiction to hear and allow those to proceed with the related federal law claims that remain.

**AFFIRMED, IN PART; REVERSED, IN PART; DISMISSED, IN PART, AND REMANDED FOR FURTHER PROCEEDINGS.**