[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-15584
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 30, 2010
JOHN LEY
CLERK

D. C. Docket No. 05-00767-CV-J-33-HTS

ORVEL W. LLOYD,

                                                       Plaintiff-Appellant,

versus

VAN TASSELL, Deputy,
in his individual and official capacities,
et al.,

                                                       Defendants,

CLARENCE JAKE CARD,
in his individual and official capacities,

                                                       Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(June 30, 2010)

Before BLACK, HULL and ANDERSON, Circuit Judges.

PER CURIAM:

After a bench trial, Plaintiff Orvel Winston Lloyd <u>pro se</u> appeals the district court's judgment in favor of Defendant Jake Card in Lloyd's 42 U.S.C. § 1983 action arising out of Lloyd's arrest.

## I. BACKGROUND

### A. Prior Appeal to this Court

During an investigation into suspected counterfeiting, law enforcement executed a search warrant at Lloyd's residence. Prior to the search, Defendant Card, a deputy with the Nassau County Sheriff's Office, conducted a background check and learned that Lloyd had prior convictions for aggravated assault and weapons charges. Consequently, Card advised the officers involved in the search to use extreme caution with Lloyd. During the search, Defendant Card found firearms on the premises.

While the search was ongoing, officers saw Lloyd's car approaching the house. Several officers, including Defendant Card, pursued Lloyd's car and eventually pulled it over, arresting Lloyd.

Lloyd's complaint asserted a § 1983 claim of excessive force and state law claims of battery and theft against Defendant Card. Lloyd also sued the nurse at the Nassau County Jail, the Nassau County Sheriff, and Officer Ryan Van Tassell,

who was also involved in Lloyd's arrest. After discovery, the district court granted summary judgment to all the defendants. On appeal, this Court affirmed the grant of summary judgment as to all defendants except Card. As to Card, this Court concluded that the district court erred in granting summary judgment on the excessive force claim against Defendant Card and any state law claims that arose from the same nucleus of operative facts.[1] See Lloyd v. Van Tassell, 318 F. App'x 755 (11th Cir. 2009).

## B. Trial Evidence After Remand

On remand, the district court appointed pro bono counsel for Lloyd. At trial, the parties presented widely contrasting versions of Lloyd's arrest. Lloyd testified that Defendant Card dragged him out of the car, slammed his head on the ground, placed him in handcuffs and then stomped on his head. According to Lloyd, Card broke Lloyd's nose, which began to bleed. Lloyd averred that all the officers present saw Card's actions and laughed at Lloyd. Card also told Lloyd he was lucky witnesses were present because the Sheriff had instructed Card to kill Lloyd.

Card and numerous other officers involved in Lloyd's arrest contradicted

---

[1]In a pre-trial order, the district court ruled that Lloyd's state law theft claim did not arise from the same nucleus of operative facts as his excessive force claim and would not be heard at trial. In its final order following the bench trial, the district court noted that even "[a]ssuming arguendo the theft claim is still before the Court, the preponderance of the evidence shows that Defendant Card did not take money from Plaintiff and so did not commit common law theft under Florida law . . . ." Lloyd does not challenge either ruling on appeal.

3

Lloyd's story. According to these witnesses, Lloyd's car fled the search scene at a high rate of speed and, although pursued by police cars with flashing lights, did not stop until a mile from Lloyd's residence. Once stopped, officers drew their firearms and, as the three occupants exited the car, Officer Van Tassell ordered them to get on the ground. The occupants did not comply. Defendant Card repeated the order to get on the ground. When they still did not comply and Lloyd appeared to be looking for a way to flee, Card used a standard police maneuver called a "lateral arm bar takedown" to force Card to the ground. This maneuver placed Card face-down on the ground, at which point Card handcuffed Lloyd.

Card stated that he did not use more force that was necessary to accomplish the takedown maneuver and denied striking Lloyd, stomping on Lloyd's head or in any way mistreating Lloyd. The other officers at the scene testified that they did not see Card kick, hit or mistreat Lloyd during the arrest. Several of the officers saw abrasions on Card's face, but denied that Card's nose was bleeding or that Card told anyone his nose was broken.

Officer Keith Whaley photographed Lloyd at the scene after he was secured, and recalled that Lloyd had a forehead abrasion, but was not actively bleeding. Whaley's photograph shows Lloyd lying face down with his hands cuffed behind his back. A subsequent booking photo shows a small abrasion above Lloyd's left

4

eye and that the tip of his nose is red and somewhat swollen.[2] The nurse at the Nassau County Jail testified that at intake Lloyd did not complain of a broken nose or that he was mistreated by officers. While at the jail, Lloyd was not treated for a broken nose, and none of the jail's medical records indicates Lloyd had a nose injury. The first time Lloyd complained of a broken nose was almost two years after his arrest.

## C. District Court's Decision

Following the trial, the district court entered an order with findings of fact and conclusions of law. The district court credited the testimony of Defendant Card and the other officers at the scene over Plaintiff Lloyd's testimony. The district court found, among other things, that: (1) Card used the takedown maneuver to put Lloyd on the ground and did not strike Lloyd during or after the takedown, (2) as a result, Lloyd had a strawberry like abrasion on his forehead, but was not actively bleeding and did not have blood around his nose. The district court concluded, inter alia, that: (1) Card and the other officers justifiably feared that Lloyd was armed and reasonably believed that Card was a flight risk; (2) Card used the necessary force to put Lloyd on the ground and afterwards did not use any force except to put Lloyd in handcuffs; (3) Card's decision to use the takedown

---

[2]Lloyd also had a black eye, but it is undisputed that this was a pre-existing injury.

5

maneuver was reasonable under the circumstances; (4) the amount of force used was minimal; and (5) Lloyd's injuries were not significant. Thus, the district court determined that Card did not use excessive force when he restrained Lloyd and was entitled to qualified immunity. The district court also determined that Card did not commit common law battery against Lloyd. The district court entered judgment in favor of Card. Lloyd, proceeding pro se, appealed.

## II. DISCUSSION

### A. Jury Trial Request

Lloyd filed his § 1983 complaint on August 12, 2005. On September 6, 2005, the defendants filed and served responsive pleadings, and discovery began. Over six months later, on March 29, 2006, Lloyd filed a motion for a jury trial. On May 23, 2006, a magistrate judge denied the jury request as untimely. The magistrate judge's order cited Federal Rule of Civil Procedure 38, which required a party to demand a jury trial within ten days of service of the last pleading to preserve the right to a civil jury trial. See Fed. R. Civ. P. 38 (b), (d).[3]

In his first appeal to this Court, Lloyd did not challenge the magistrate judge's denial of his request for a jury trial. After remand and the appointment of counsel, Lloyd filed a motion to reconsider the earlier order denying his jury

_____

[3]Rule 38 has since been amended to allow fourteen days instead of ten.

6

request.  The district court denied the motion to reconsider.

In this second appeal, Lloyd argues that the magistrate judge's denial of his request for a jury trial was an abuse of discretion.  We are precluded by the law of the case doctrine from addressing the magistrate judge's May 23, 2006 order denying Lloyd's motion for a jury trial.  "Under the law of the case doctrine, a legal decision made at one stage of the litigation, unchallenged in a subsequent appeal when the opportunity existed, becomes the law of the case for future stages of the same litigation, and the parties are deemed to have waived the right to challenge that decision at a later time."  United States v. Escobar-Urrego, 110 F.3d 1556, 1560 (11th Cir. 1997) (quotation marks omitted).  Lloyd had the opportunity to appeal the magistrate judge's May 23, 2006 order in his first appeal, but did not.  Thus, the denial of Lloyd's motion for a jury trial is the law of the case.

Construing Lloyd's pro se brief liberally to argue that the district court should have granted his post-remand motion for reconsideration of the magistrate judge's May 23, 2006 order, we find no abuse of discretion.[4]  The law of the case doctrine prevented Lloyd from litigating whether his jury demand was timely or whether his untimeliness should have been excused.  Furthermore, a motion for reconsideration cannot be used to "relitigate old matters," including those

---

[4]We review for abuse of discretion a district court's denial of a motion to reconsider. Corwin v. Walt Disney Co., 475 F.3d 1239, 1254 (11th Cir. 2007).

arguments that were "previously available, but not pressed." Wilchombe v.

TeeVee Toons, Inc., 555 F.3d 949, 957 (11th Cir. 2009) (quotation marks omitted).

Accordingly, the district court properly denied Lloyd's motion for reconsideration.

**B.     Judgment in Favor of Card**

Lloyd argues that the district court erred by finding in favor of Card,

contending that Card and the other officers gave false testimony at trial about the

circumstances of his arrest. After review, we find no reversible error in the district

court's findings of fact or conclusions of law.[5]

The district court found that Defendant Card did not strike Lloyd during or

after the takedown procedure and that Card's actions caused abrasions to Lloyd's

face, but did not break his nose. The district court's findings are supported by the

testimony of numerous officers, including Card, Lloyd's medical records and

photographs of Lloyd taken at the scene of his arrest and after he was booked into

the jail. The district court specifically credited the testimony of Card and the other

officers over Lloyd's conflicting testimony. Lloyd has given us no reason to

disturb this credibility determination. See Anderson v. City of Bessemer City, 470

---

[5]After a bench trial, we review a district court's conclusions of law de novo and the court's factual findings for clear error. Renteria-Marin v. Ag-Mart Produce, Inc., 537 F.3d 1321, 1324 (11th Cir. 2008). "A factual finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Morrissette-Brown v. Mobile Infirmary Med. Ctr., 506 F.3d 1317, 1319 (11th Cir. 2007) (quotation marks omitted).

U.S. 564, 575, 105 S. Ct. 1504, 1512 (1985) (explaining that "when a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding if not internally inconsistent, can virtually never be clear error"). Thus, Lloyd has shown no clear error in the district court's factual findings.

We likewise find no error in the district court's legal conclusions. Given that: (1) the officers had reason to believe Lloyd might be armed; (2) Lloyd failed to comply with officers' prior requests to get on the ground; and (3) Lloyd appeared to be about to flee, we agree with the district court that it was constitutionally reasonable for Defendant Card to use a routine "arm bar" takedown procedure to put Lloyd on the ground in a way that ensured Lloyd could not access any weapons he might have before he was handcuffed. Under the circumstances presented, the force was necessary to safely secure Lloyd and, although it resulted in abrasions to Lloyd's forehead and nose, did not constitute excessive force under the Fourth Amendment. See Graham v. Connor, 490 U.S. 386, 397, 109 S. Ct. 1865, 1872 (1989) (providing that the question is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them"). Nor did it constitute an actionable battery under Florida law.

9

See Fla. Stat. § 776.05(1); City of Miami v. Sanders, 672 So.2d 46, 47 (Fla. 3d

Dist. Ct. App. 1996).  Consequently, the district court correctly entered judgment

in favor of Defendant Card on Lloyd's claims of excessive force and battery.[6]

**AFFIRMED.**

---

[6]Lloyd argues that his court-appointed pro bono lawyers' poor performance denied him access to the courts.  However, "[a] party . . . does not have any right to a new trial in a civil suit because of inadequate counsel . . . ." Mekdeci ex rel. Mekdeci v. Merrell Nat'l Labs., 711 F.2d 1510, 1523 (11th Cir. 1983) (quotation marks omitted, emphasis added).  In any event, nothing in the record indicates that Lloyd was denied access to the courts or deprived of a fair trial.  To the contrary, the record suggests that Lloyd's attorneys vigorously represented him.