[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-12008

_____

D.C. Docket No. 1:15-cv-00428-WSD


DONOVAN HALL,
ROGER REUBEN, JR.,

                                        Plaintiffs - Appellants,

versus

SERGEANT DAN MCGHEE,
in his individual capacity,
CHARLES DIX,
in his individual capacity,
AARON JACKSON,
in his individual capacity,
RAY HUNT,
in his individual capacity,
JOHN DOES 1-4,
in their individual capacities as deputies of the DeKalb County Sheriff's Office,

                                        Defendants - Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(March 6, 2019)

Before WILSON and JORDAN, Circuit Judges, and MOORE,[*] District Judge.

MOORE, District Judge:

This appeal arises out of a civil lawsuit Mr. Hall and Mr. Reuben filed against Sergeant Dan McGhee, Deputy Sheriff Charles Dix, Sheriff Ray Hunt, Deputy Sheriff Aaron Jackson, and John Does 1-4, all officers of the DeKalb County Sheriff's Office, pursuant to 42 U.S.C. § 1983 and § 1988, alleging that their Fourth Amendment rights were violated when excessive force was used against them in their home. The district court granted the officers' motion for summary judgment, finding that the officers were entitled to qualified immunity on all claims of excessive force. Mr. Hall and Mr. Reuben now appeal. We disagree with the district court that Sergeant McGhee is entitled to qualified immunity at this stage on Mr. Hall's claims that Sergeant McGhee stood on his head with both feet and hit him in the head with a gun. In regard to the other claims of excessive force, we agree with the district court that the officers are entitled to qualified

---

[*] Honorable William T. Moore, United States District Judge, for the Southern District of Georgia, sitting by designation.

2

immunity. Because the district court failed to analyze each claim of excessive force separately, we reverse in part and affirm in part.

## I.     BACKGROUND

Natania Griffin, the mother of the Appellants, Donovan Hall and Roger Reuben, Jr., had an outstanding civil arrest warrant. Officers from the DeKalb County Sheriff's Office, Investigator Harold Sean Williams, Deputy Niyema Smith, and Deputy Sheriff Aaron Jackson, arrived at Ms. Griffin's address around 1:13 a.m. on July 26, 2013 to execute the arrest warrant.[1] After running the tag on the car in the driveway and learning that it was registered to Ms. Griffin and Mr. Reuben, Investigator Williams and Deputy Smith approached the front of the home, while Deputy Sheriff Jackson went to the back of the home to ensure no occupants left the home. While Deputy Smith knocked on the door, Investigator Williams watched the inside of the home through a large window and observed Ms. Griffin crawling on the floor at the top of the stairs. Investigator Williams shined his flashlight inside the house to let the occupants know he could see them. The officers progressively knocked harder. Deputy Sheriff Jackson told Investigator Williams and Deputy Smith by radio that he saw someone crawling on the floor and saw people passing something back and forth.

---

[1] Investigator Harold Sean Williams and Deputy Niyema Smith are not named defendants or Appellees here.

3

Other officers heard these radio communications and Sergeant Dan McGhee, Deputy Sheriff Charles Dix, and Sheriff Ray Hunt responded to the scene to assist. Once on scene, Sergeant McGhee unsuccessfully tried to convince Mr. Hall, Mr. Reuben and Ms. Griffin to open the door.  Mr. Hall and Mr. Reuben claim that Sergeant McGhee and other officers were extremely aggressive and were yelling, cursing at, and threatening them.  Mr. Hall called 911, verified that the individuals outside were law enforcement officers, and was instructed by the 911 operator several times to open the door for the officers.   At some point, one of the officers on the scene activated the blue lights on a marked police car to prove that they were law enforcement officers.  After being on scene for 20-35 minutes, the officers began to grow concerned about their safety due to Mr. Hall, Mr. Reuben, and Ms. Griffin's odd and noncompliant behavior.  After a neighbor spoke to Ms. Griffin through the door, the door opened and the officers entered the home.  Ms. Griffin was taken into custody by the front door.

According to Mr. Hall and Mr. Reuben, the officers rushed into the home. Mr. Hall and Mr. Reuben contend that they did not resist the officers' efforts to detain them.  However, Mr. Hall and Mr. Reuben retreated further into the home when the officers entered.  Mr. Hall claims that, while his arms were restrained by other officers, Sergeant McGhee used his gun to hit him in the face and then stood

4

on Mr. Hall's head with both feet.[2]   Mr. Reuben claims that one of the officers picked him up and body slammed him on the floor.  Once on the floor, Mr. Reuben claims that Deputy Sheriff Jackson pressed his taser against his neck and threatened to tase him if he did not move his hands from underneath him.  Mr. Hall claims he saw multiple officers on top of Mr. Reuben punching and kicking him, and that one of the officers was spitting, cursing, and threatening to tase him.

Mr. Hall and Mr. Reuben were handcuffed and placed on the couch.  Mr. Hall and Mr. Reuben claim that Deputy Sheriff Jackson moved back and forth between them, pointing his taser at them and pressing it against their heads.  After detaining Mr. Hall and Mr. Reuben, officers performed a security sweep of the home.  The officers decided not to arrest Mr. Hall and Mr. Reuben for obstruction, un-handcuffed Mr. Hall and Mr. Reuben, and left the home.  A report of the officers' radio traffic indicates that the first officer arrived on scene at 1:13 a.m. and the last officer left the scene at 2:48 a.m.

Later that day, Ms. Griffin and Mr. Hall visited DeKalb Medical Center ("DMC") where Mr. Hall was treated and discharged.  Mr. Hall complained of pain in his face, back, and legs.  The DMC Emergency Room Report noted

---

[2]  Mr. Hall has conflicting deposition testimony.  At one point, Mr. Hall states that he was hit in the face with a gun while his arms were restrained, but not handcuffed. Mr. Hall elsewhere says that he was hit in the face with the gun, began to fall because he lost his balance, and then, once he was falling, the officers grabbed his arms and began to twist them.  Because we are to construe the facts in the favor of the non-movant at this stage, we will use Mr. Hall's position that his arms were restrained when he was hit in the face with a gun.

5

tenderness in Mr. Hall's back and right shoulder, and listed the diagnosis as physical assault, head injury, right shoulder injury, back injury and right knee injury, and prescribed him pain medication.  The DMC report stated that no facial or head trauma was noted nor any abrasions, lacerations, or bruises.  DeKalb County Police Officer Pham responded to the assault call at DMC and noted in his report that there were no visible injuries on Mr. Hall.  Mr. Reuben claims he suffered physical pain to his back and head, that his asthma was aggravated by the officers' actions, and that he now has trouble sleeping.

Mr. Hall and Mr. Reuben sued Sergeant Dan McGhee, Deputy Sheriff Charles Dix, Sheriff Ray Hunt, Deputy Sheriff Aaron Jackson, and John Does 1-4 under 42 U.S.C. § 1983 and § 1988 for excessive force in violation of the Fourth Amendment.[3]  In their complaint, Mr. Hall and Mr. Reuben also alleged that the officers were liable for failing to intervene in response to the use of force.  Mr. Hall and Mr. Reuben also asserted state law claims, which are not at issue on appeal.

The officers moved for summary judgment, arguing, among other things, that they were entitled to qualified immunity.  The district court, viewing the evidence in the light most favorable to Mr. Hall and Mr. Reuben, concluded that the officers had not used objectively unreasonable force and, therefore, were

---

[3] The district court dismissed John Does 1-4 in its Order granting summary judgment.

6

entitled to qualified immunity. The district court also determined that, because the force used was not objectively unreasonable, the defendants had no duty to intervene to stop the allegedly excessive force.[4] Mr. Hall and Mr. Reuben now appeal the grant of qualified immunity.

## II.    STANDARD OF REVIEW

Our review of a district court's grant of summary judgment based on qualified immunity is reviewed de novo and we resolve all issues of material fact in favor of Plaintiffs and then answer the legal question of whether Defendants are entitled to qualified immunity under that version of the facts. *Case v. Eslinger*, 555 F.3d 1317, 1324–25 (11th Cir. 2009). However, "'[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record [as with a video recording of the incident], so that no reasonable jury could believe it, a court should not adopt that version of the facts.'" *Manners v. Cannella*, 891 F.3d 959, 967 (11th Cir. 2018) (alteration adopted) (quoting *Scott v. Harris*, 550 U.S. 372,

---

[4] Because it found that none of the officers' actions constituted excessive force, the district court rejected Mr. Hall and Mr. Reuben's arguments that the officers were liable for failing to intervene in the use of force. On appeal, Mr. Hall and Mr. Reuben generally conclude that the officers are liable for failing to intervene but do not specifically brief the issue. In response, the officers briefly argue that, as there was no excessive force used, there was no duty to intervene. Although legally distinct, the outcome of Mr. Hall and Mr. Reuben's failure to intervene claim is closely linked to the excessive force claims because the duty to intervene only arises when another officer uses excessive force. *See Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919, 927 (11th Cir. 2000). Therefore, as we reverse the district court's grant of qualified immunity to Sergeant McGhee, the district court, on remand, should more thoroughly consider Mr. Hall and Mr. Reuben's claim that the other officers are liable for failing to intervene in the use of force by Sergeant McGhee.

380, 127 S. Ct. 1769, 1776, 167 L.Ed.2d 686 (2007)). Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue of material fact for the jury to decide. *Id.*

## III.   DISCUSSION

In order to be entitled to qualified immunity, the officers first must "establish that they were acting within their discretionary authority during the incident." *Manners*, 891 F.3d at 967. If it is shown that the officers acted within their discretionary authority, the burden shifts to the plaintiff(s) to demonstrate that qualified immunity is not appropriate. *Id.* at 968. Here, it is not contested that the officers were acting in their discretionary authority when executing a civil arrest warrant. To overcome qualified immunity, the plaintiff(s) must "show the officer's conduct violated a constitutional right," and that right "was clearly established" at the time of the alleged conduct. *Saucier v. Katz*, 533 U.S. 194, 201, 102 S. Ct. 2151, 2156, 150 L.Ed.2d 272 (2001). We do not have to consider the *Saucier* prongs in sequential order. *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S .Ct. 808, 818, 172 L.Ed.2d 565 (2009).

A constitutional excessive force claim is evaluated under the Fourth Amendment's "reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 394–95, 109 S. Ct. 1865, 1871, 104 L.Ed.2d 443 (1989). The "inquiry in an excessive force case is an objective one: the question is whether the officers actions are

8

'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397, 109 S. Ct. at 1872. The determination of whether the force used was reasonable is viewed from the perspective of a "reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396, 109 S. Ct. at 1872.

Qualified immunity applies unless the application of the reasonable officer standard would "inevitably lead every reasonable officer to conclude the force was unlawful." *Nolin v. Isbell*, 207 F.3d 1253, 1255 (11th Cir. 2000). To balance the reasonableness of the force used, close attention must be paid to "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396, 109 S. Ct. at 1872. Other considerations include "the need for the application of force, the relationship between the need and the amount of force used, and the extent of the injury inflicted." *Saunders v. Duke*, 766 F.3d 1262, 1267 (11th Cir. 2014) (alteration adopted) (internal quotations and citations omitted).

The right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat of force. *Graham*, 490 U.S. at 396, 109 S. Ct. at 1871–72. Thus, the use of *de minimis* force, without

9

more, will not support a claim of excessive force. *Nolin*, 207 F.3d at 1257. However, the gratuitous, unwarranted use of force during the course of an arrest is excessive. *Manners*, 891 F.3d at 973. We have repeatedly ruled that a police officer violates the Fourth Amendment, and is denied qualified immunity, if he or she "uses gratuitous and excessive force against a suspect who is under control, not resisting, and obeying commands." *Saunders*, 766 F.3d at 1265.

Mr. Hall and Mr. Reuben did not allege discrete claims of excessive force against individual officers in their complaint. However, to the extent the excessive force claims were pled against individual officers, the claims are presented in that format. Thus, the grant of summary judgment is appropriate only to certain claims, as addressed below.

## A.

First, Mr. Hall and Mr. Reuben assert that the officers used excessive force when the officers hit and kicked Mr. Hall, officers "body-slammed," hit, and kicked Mr. Reuben, and that Deputy Sheriff Jackson pressed his taser against Mr. Reuben's neck while he was on the floor before he was handcuffed.

We must determine whether the facts, taken in the light most favorable to Mr. Hall and Mr. Reuben, show that the officers' conduct violated a constitutional right and, if so, whether this constitutional right was clearly established at the time of the alleged conduct—July 26, 2013. To overcome qualified immunity, both

10

questions must be answered in the affirmative. *Saucier*, 533 U.S. at 201, 102 S. Ct. at 2156. The determination of whether the force used was reasonable is viewed from the perspective of a "reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396, 109 S. Ct. 1872. *Graham* provides numerous factors to guide the excessive-force inquiry, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.*

The amount of force used by the officers at this point did not violate the Fourth Amendment. The first *Graham* factor, the severity of the crime at issue, weighs in favor of the officers. Mr. Hall and Mr. Reuben refused to answer the door for over half an hour, and the officers on the scene expressed concerns that Mr. Hall and Mr. Reuben were obstructing justice by refusing to answer the door to the police. Although we take Mr. Hall and Mr. Reuben's facts as true at this stage in the proceedings, we evaluate those facts from the perspective of a reasonable officer on the scene to determine whether the force used was objectively reasonable. *Manners*, 891 F.3d at 973. Here, officers at the scene perceived that the occupants were crawling in the home and passing items back and forth, which officers believed might include a camera. A reasonable officer on the scene could believe that other items, like weapons or drugs, were also being

passed back and forth.  Additionally, Mr. Hall and Mr. Reuben refused to open the door for over half an hour after verifying with 911 that police were at the door and an officer activating the blue lights on a marked police car.  Accordingly, a reasonable officer at the scene could have probable cause or reasonable suspicion to believe that other criminal activity was occurring.

The second *Graham* factor, whether the suspect poses an immediate threat to the safety of the officers or others, weighs in favor of the officers.  While Mr. Hall and Mr. Reuben claim that the police entered in such a rush that they were unable to comply with the officers' demands, the parties agree that Mr. Reuben and Mr. Hall retreated further into the home when the officers entered and failed to comply with the officers' orders to get on the ground.  A reasonable officer on the scene could perceive the retreat into the home as a threat to the officers' safety, considering the officers' perception that the occupants of the home had been crawling in the home and passing items back and forth.

The third factor, whether the suspects were actively resisting arrest or attempting to evade arrest, narrowly falls in favor of the officers.  When the officers entered the home, Mr. Reuben and Mr. Hall split up and retreated further into the house and did not immediately obey the officers' orders to get on the ground.  A reasonable officer on the scene could perceive these actions as an attempt to flee or to retrieve a weapon.  In addition, Mr. Reuben contends that his

arms and hands were pinned under his stomach and he could not comply with the officers' demands to remove his hands.  Even taking Mr. Reuben's version of events as true, a reasonable officer on the scene in the tense and quickly evolving situation could perceive this initial failure to follow instructions as an attempt to resist custody.

Because the three *Graham* factors fall in favor of the officers, the officers acted in an objectively reasonable way given the circumstances.  Qualified immunity applies unless the application of the reasonable officer standard would "inevitably lead every reasonable officer to conclude the force was unlawful." *Nolin*, 207 F.3d at 1255.  Even construing the evidence in a light most favorable to Mr. Hall and Mr. Reuben, the circumstances would not lead every reasonable officer to conclude that the force used, including "body-slamming" a suspect and putting a knee into his back to effectuate control over the suspect, threatening the use of a taser before a suspect is placed in handcuffs, and hitting and kicking a potentially non-compliant suspect, was excessive and unlawful.  The district court correctly granted summary judgment on qualified immunity grounds with respect to these claims.  Because qualified immunity is appropriate on these claims, the district court was also correct in finding that there was no liability on part of the officers for failing to intervene.

**B.**

13

Next, Mr. Hall asserts that excessive force was used against him in violation of the Fourth Amendment when Sergeant McGhee stood on his head with both feet and pistol-whipped him when he was restrained and not resisting. Mr. Hall and Mr. Reuben argue that it cannot be concluded as a matter of law that an objectively reasonable officer would have known that pistol-whipping Mr. Hall and standing on his head is not excessive and that, once Mr. Hall was restrained, the use of force was a violation of his Fourth Amendment right. We agree.

The facts alleged show that Sergeant McGhee's conduct violated a constitutional right. We have repeatedly ruled that gratuitous use of force when a suspect is not resisting arrest constitutes excessive force. *Hadley v. Gutierrez*, 526 F.3d 1324, 1330 (11th Cir. 2008). "An officer may not use force disproportionate to the amount required to secure a suspect," and, generally, greater force is not reasonable when the officer did not encounter "any danger or physical resistance that required him to escalate his use of force" to effectuate arrest. *Scott v. City of Red Bay, Alabama*, 686 F. App'x 631, 634 (11th Cir. 2017). *De minimis* force, without more, will not support a claim of excessive force. *Saunders*, 766 F.3d at 1270 (citation and internal quotation marks omitted).

In *Saunders v. Duke*, an officer slammed the handcuffed, unresisting plaintiff's head into the pavement after the plaintiff lifted his head from the hot pavement to keep from getting burned. 766 F.3d at 1269–70. In that case, we held

14

that the officer's conduct was "unnecessary, disproportionate, and constitutionally excessive," because the plaintiff was not resisting or posing a threat to anyone when his head was slammed into the pavement with extreme force. *Id.* at 1268. Likewise, in *Slicker v. Jackson* the officers arrested and handcuffed the plaintiff, slammed his head against the pavement, knocking him unconscious, and then kicked the plaintiff numerous times after he came to. 215 F.3d 1225, 1227–28 (11th Cir. 2000). In *Slicker*, we denied qualified immunity to the officers because the plaintiff "was handcuffed and did not resist, attempt to flee, or struggle with the officers in any way." *Id.* at 1233.

Mr. Hall and Mr. Reuben cite to *Smith v. Mattox*, 127 F.3d 1416 (11th Cir. 1997) and *Sheth v. Webster*, 145 F.3d 1231 (11th Cir. 1998), as support for the conclusion that the use of unnecessary force after Mr. Hall was restrained and unresisting was a violation of their rights. In *Smith*, the plaintiff raised a bat to the officer and the officer drew his gun, told plaintiff to drop the bat, and threatened to shoot after the plaintiff initially did not drop the bat. 127 F.3d at 1418. The plaintiff dropped the bat, ran, and then later "docilely submitted" to arrest upon the officer's request for him to get down. *Id.* The officer handcuffed the plaintiff, breaking the plaintiff's arm in the process. *Id.* While some force was necessary to put the plaintiff into a cuffing position, the extent of the force used was excessive and the unlawfulness of the conduct was readily apparent. *Id.* at 1420. We found

15

that it was clearly established that the officer's conduct violated the Fourth Amendment because the conduct "was so far beyond the hazy border between excessive and acceptable force that [the officer] had to know he was violating the Constitution even without caselaw on point." *Id.* at 1419.

In *Sheth*, the officer slammed the plaintiff against a vending machine while arresting her without cause after she contradicted the officer on the law surrounding evictions. 145 F.3d at 1234. On appeal, we affirmed the district court's denial of summary judgment on qualified immunity because no reasonable officer would conclude that the force was lawful as the plaintiff posed no danger to the officer or others. *Id.* at 1238.

Based on these cases, Mr. Hall's allegations that he was hit in the head with a gun and then had his head stood on while he was restrained and not resisting are sufficient to state a Fourth Amendment claim. As there is a genuine issue as to whether this force was excessive, the grant of summary judgment should be reversed with respect to Sergeant McGhee on these claims.

Further, the broader constitutional principle that applying unwarranted force on a compliant suspect constitutes excessive force has been in our case law since the early 2000s. *See Hadley*, 526 F.3d at 1330; *Slicker*, 215 F.3d at 1233; *Lee v. Ferraro*, 284 F.3d 1188, 1198 (11th Cir. 2002). Hitting a restrained, unresisting suspect in the face with a gun and standing on his head while he is unresisting is

16

the type of conduct that "lies so obviously at the very core of what the [Fourth Amendment] prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of case law." *Jones v. Fransen*, 857 F.3d 843, 852 (11th Cir. 2017) (internal quotation marks and citations omitted). We cannot find that a reasonable officer in Sergeant McGhee's position would believe the conduct alleged to be lawful and sanctioned by the Constitution. As such, the district court erred in granting summary judgment to Sergeant McGhee on the claims that he hit Mr. Hall in the face with a gun and stood on Mr. Hall's head.

Additionally, the district court erred in weighing too heavily the extent of the injury in determining that the force used was *de minimis*. The focus in an excessive force claim is on the nature of the force used rather than the extent of the injury. *Saunders*, 766 F.3d at 1270 (applying the Eighth Amendment excessive force rationale to Fourth Amendment excessive force claims); *Lloyd v. Van Tassell*, 318 F. App'x 755, 758 (11th Cir. 2009) (finding objectively unreasonable force does not become *de minimis* merely because the plaintiff only suffered minimal harm). The principle of *de minimis* force has never been used to "immunize officers who use excessive and gratuitous force after a suspect has been subdued, is not resisting, and poses no threat." *Saunders*, 766 F.3d at 1269–70. Thus, while the record, namely the DMC ER Report, does not support a finding

17

that the injury was severe, this does not foreclose an analysis on whether the force used was excessive.

The district court erred in granting summary judgment to Sergeant McGhee on the claims that Sergeant McGhee hit Mr. Hall in the face with a gun and stood on his head. Taking Mr. Hall and Mr. Reuben's facts as true, as we must at this stage, Mr. Hall was not resisting and was restrained when these actions occurred. This appears sufficient to create a genuine issue of material fact as to whether Sergeant McGhee's actions were unreasonable and, therefore, constituted excessive force. As such, it creates a genuine issue as to whether the other officers are liable for failing to intervene which should be considered on remand.

## C.

Finally, Mr. Hall and Mr. Reuben claim that excessive force was used when Deputy Sheriff Jackson moved them and pressed a taser against their heads and threatened to tase them while they were sitting on a couch handcuffed. We disagree.

We have found no controlling caselaw in this circuit that would have put Deputy Sheriff Jackson on notice that pointing, pressing, and threatening the use of a taser is excessive force under the Fourth Amendment. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he

18

confronted." *Saucier*, 533 U.S. at 202, 121 S. Ct. at 2156. "If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Id.*

We have routinely held that the application of gratuitous force against a suspect who is compliant and already handcuffed is excessive, even if there is no visible or compensable injury. *Saunders*, 766 F.3d at 1265. However, the application of *de minimis* force, without more, will not support a claim for excessive force. *Croom v. Balkwill*, 645 F.3d 1240, 1252 (11th Cir. 2011). We have found force not to be *de minimis* where a handcuffed plaintiff's head was slammed against the trunk after she had been secured, the plaintiff was punched in the stomach while handcuffed and not resisting, and the plaintiff, while handcuffed, was kicked and beat until unconscious. *See Lee*, 284 F.3d at 1198; *Hadley*, 526 F.3d at 1330; *Slicker*, 215 F.3d at 1231–32. In these cases, the force used and the injury inflicted were severe. In contrast, here the only claim is that Deputy Sheriff Jackson pressed a taser against Mr. Hall's and Mr. Reuben's temples. There is no allegation that Deputy Sheriff Jackson activated the taser or used the taser to cause any injury to Mr. Hall or Mr. Reuben. Thus, as our decisions in *Hadley*, 526 F.3d at 1330, *Slicker*, 215 F.3d at 1231–32, and *Lee*, 284 F.3d at 1198, involved the actual use of force, we cannot find that these cases would place Deputy Sheriff Jackson on notice that merely threatening to use force,

without effectuating it, was clearly unlawful.  The use of force by Deputy Sheriff Jackson was, at the most, *de minimis*.  The district court did not err in granting summary judgment to Deputy Sheriff Jackson on these claims.

## IV.    CONCLUSION

As discussed above, the district court erred in granting summary judgment and qualified immunity to Sergeant McGhee on the claims that excessive force was used when Sergeant McGhee hit Mr. Hall's face with a gun and stood on Mr. Hall's head.  We reverse the grant of summary judgment as to Sergeant McGhee and remand for further proceedings.

**AFFIRMED, IN PART, REVERSED, IN PART, and REMANDED FOR FURTHER PROCEEDINGS.**